UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| DAVID BRIDGES, )<br>)<br>Plaintiff, )<br>)<br>v.                                          )<br>)<br>MAURICE OUELLETTE, *et al.*,     )<br>)<br>Defendants     ) | 2:13-CV-00082-NT |

**RECOMMENDED DECISION**

Pro se plaintiff David Bridges, currently a resident of the Maine State Prison, spent approximately two months of 2012 housed in the York County Jail. Bridges alleges that he was denied medications for his mental health conditions during his stay in the jail and that, consequently, he became mentally unstable, inflicted serious injuries on himself, was forced to remain in a suicide smock for 30 days, and was physically abused by corrections officers. Defendant Bob Lancaster, a Department of Corrections employee, has filed a motion for summary judgment. Defendants Cindy McDonough, RN, and Eileen Mageary, RN, have filed a motion to dismiss. In opposition to Lancaster's motion for summary judgment, Bridges has filed a motion for discovery under Rule 56(d). The court referred the three motions for report and recommendation. For reasons that follow, I recommend that the court deny the dispositive motions and moot Bridges's motion.

**PLAINTIFF'S ALLEGATIONS**

Bridges alleges that he was detained in the York County Jail between August 20, 2012, and October 25, 2012, as a result of a probation violation. (Complaint ¶ 14.) Bridges does not indicate whether he was detained in York County as a pretrial detainee or following sentencing

on the probation violation. Bridges notified "defendants" upon his arrival at the jail that he had an extensive and serious mental health history and that he was prescribed various medications to treat his conditions. (Id. ¶ 15.) In an affidavit offered in response to the nurses' motion to dismiss, Bridges elaborates that his conditions include major depressive disorder, schizophrenia, and explosive anger disorder and that he explained this, on intake, to "the medical intake nurse." (Bridges Aff. ¶ 3, ECF No. 27-1.) He asked to see a medical doctor to get the appropriate prescriptions. (Id. ¶ 4.) The intake nurse told Bridges that he probably would not get his medications because they are expensive. (Id.; Complaint ¶ 16.)

After 72 hours in the jail, Bridges convinced himself that he would be killed at the jail and tried to escape. His efforts earned him a placement in "the hole," where he became depressed and distressed "in the throes of a sort of psychosis." (Complaint ¶ 18.) In this state, Bridges "slit open his scrotum and laid his testicles out, believing that if he 'had no balls,' they would let him out of the hole." (Id.)

Jail personnel saw to it that Bridges was transported to the hospital. Upon his return, jail personnel placed him in what Bridges calls a "turtle suit," or anti-suicide smock, with metal leg irons and handcuffs secured to a waist chain. (Id. ¶ 19.) According to Bridges, he remained in this garb for over thirty days, except that he was allowed out three times per week for a 15-minute shower. (Id.) Sometime during this period, how and when is not indicated, Bridges "sliced into his arms, nearly to the bone," and returned to the hospital. (Id. ¶ 20.) When he returned he was once more placed in "the hole." (Id. ¶ 21.)

Bridges alleges that "on the third day"[1] he managed to slide the waist chain of the smock down over his hips and feet. (Id. ¶ 26.) He used the loose chain to bang on the door of his room

---

[1] It is unclear whether he means the third day after his return from the second trip to the hospital. That timing is suggested by the order of the allegations.

and was "trying to get help" when corrections officers assaulted him with a chair and choked him. (Id. ¶ 27.) According to Bridges, jail staff determined that he was not a threat to himself after ten days of being in the smock, but he was nevertheless kept in it for a total of 30 days. (Id. ¶ 32.)

Bridges says that he filled out numerous medical request slips during his stay at the jail, requesting treatment for his mental health, and that he was never allowed to see, speak to, or consult with a psychiatrist, though he was told that "they" had consulted a psychiatrist. (Bridges Aff. ¶¶ 5-6.) He does not clarify who "they" were, but he otherwise alleges that he spoke to defendant McDonough "no less than three times" and submitted sick call slips numerous times, and that defendants McDonough and Mageary "refused to provide him access to any psychiatrist or mental health treatment other than to 'talk' to [him]." (Complaint ¶¶ 22-23.) Bridges also alleges that he would complain to each nurse who came to see him about the lack of mental health care but never received any assistance. (Id. ¶ 25.) According to Bridges, McDonough was the primary medical care provider at the jail and Mageary was "responsible for insuring that inmates . . . receive medical and mental health care." (Id. ¶ 44.) Bridges says that McDonough, Mageary, and other unknown decision makers decided it was too expensive to provide Bridges with psychoactive medications and therefore never allowed him to see a psychiatrist. He further alleges that none of the harm he experienced would have befallen him had he been supplied with medications in a reasonably prompt manner. (Id.)

In contrast to his experience at the jail, Bridges asserts that he was provided with multiple medicines within 24 hours of his transfer to the Maine State Prison and that he met with a doctor at the prison and has been in stable condition since because he received mental health treatment. (Id. ¶¶ 46-47; Bridges Aff. ¶¶ 7-8.)

In addition to bringing his denial of medical care claim against McDonough and Mageary, Bridges believes that it may have been within the power of defendant Bob Lancaster to intercede and prevent him from remaining in restraints for a period of 30 days without access to appropriate medical attention for his mental health condition. Sometime during his 30-day experience, or so it appears from the complaint, Bridges filed a grievance with the Department of Corrections. (Complaint ¶ 42.) Bridges alleges that Lancaster "had an opportunity to act . . . on [the] grievance," but instead simply concluded that there were "no violations of mandatory standards." (Id.)

Bridges also includes in his complaint John/Jane Doe defendants, whom he identifies as the psychiatrist who serves the jail, presently unknown to him. (Id. ¶ 12.) Bridges alleges that this individual and the other defendants refused to provide mental health care as a cost-saving measure. (Id. ¶ 39.)

### DEFENDANT LANCASTER'S AFFIDAVIT AND EXHIBITS

In support of his motion for summary judgment, Lancaster has submitted an affidavit and supporting exhibits. One exhibit is a copy of the grievance letter Bridges filed with the Department of Corrections. (ECF No. 13-2.) The letter bears a date of September 14, 2012, almost a month into Bridges's stay at the jail. In it, Bridges complained of being restrained around the clock despite being off suicide watch and "good" for almost two weeks. He also complained of being on medications since age 11 and that a refusal of all medication for his mental illness was "taking a toll." (Id.)

In his affidavit, Lancaster explains that he is the Department of Corrections Compliance Manager and that he is responsible for, among other things, "enforcing the mandatory standards promulgated by the Department pursuant to statute." (Lancaster Aff. of May 9, 2013 ¶ 2.) In

addition, Lancaster investigates and responds to inmate complaints involving complaints of "non-compliance with mandatory jail standards," which must be filed with the Department's Division of Operations.  (Id. ¶ 3.)  Lancaster says that he investigated Bridges's complaints concerning full restraints, being charged in his cell and choked, and another complaint about hygiene supplies.  (Id. ¶ 4.)  According to Lancaster, he determined as part of this investigation that Bridges "was at a high risk of self-injurious and assaultive behavior, such that keeping him in full restraints was not unwarranted."  (Id. ¶ 6.)  Lancaster responded to Bridges's complaint by letter dated October 12, 2012, and related this and other findings to Bridges.  (Id. ¶ 9.)  Lancaster's letter is attached to his affidavit.  (ECF No. 13-3.)  In the letter, Lancaster noted:  "I do find that you were in full restraints even though you were not on suicide protocol.  However, I also reviewed documentation from the past 2 months that verify numerous attempts of suicidal behavior, some resulting in hospital review and treatment."  (Id.)  Lancaster concluded that the evidence did not indicate that any "mandatory standards" were violated.  (Id.)

## DISCUSSION

Part A of the discussion addresses the motion to dismiss filed by McDonough and Mageary.  Part B addresses Lancaster's motion for summary judgment and Bridges' request for discovery.

**A.**     **McDonough and Mageary's Motion to Dismiss**

    **1.**     *Standard of review*

Rule 12 of the Federal Rules of Civil Procedure provides that a complaint can be dismissed for, among other things, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To state a claim, a plaintiff must set forth (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the

claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a). The court must accept as true the factual allegations of the complaint, draw all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determine whether the complaint, so read, sets forth a claim for recovery that is "plausible on its face." Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). "A claim is facially plausible if supported by 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 129 S. Ct. at 1949). A plaintiff's complaint need not provide an exhaustive factual account, only "a short and plain statement." However, the allegations must be sufficient to identify the manner by which the defendant subjected the plaintiff to harm and the harm alleged must be one for which the law affords a remedy. Iqbal, 129 S. Ct. at 1949.

When the plaintiff is a pro se litigant, the court will review his or her complaint subject to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Additionally, the pleadings of pro se plaintiffs are generally interpreted in light of supplemental submissions, such as any response to a motion to dismiss. Wall v. Dion, 257 F. Supp. 2d 316, 318 (D. Me. 2003). Consistent with this approach, the foregoing recitation of Bridges's allegations includes representations he has put forward in his affidavit in opposition to the motion to dismiss.

### 2.     *Discussion*

McDonough and Mageary assert that Bridges's allegations fail to raise a plausible claim. They contend that the deliberate indifference standard is not met here because Bridges has indicated that the defendants in fact transported him to a hospital and placed him in the suicide

6

smock, which, they say, demonstrates that they were attentive to his needs. (Motion to Dismiss at 7.) They say their attention to his needs is also reflected in Bridges's indication that someone evaluated him and determined he was no longer a suicide risk after ten days in the suicide smock. (Id. at 9.) They allow that Bridges has "arguably" identified a serious medical need in light of his first self-cutting episode, but assert that treatment decisions made in the wake of that episode do not reasonably support an inference that they were subjectively aware of and ignored a substantial risk of further harm. They maintain that the allegations simply boil down to a dispute over treatment options, not deliberate indifference or a complete denial of care. (Id. at 8-9.) They also caution that Bridges is asking the Court to "second-guess his medical providers over whether he should have been able to talk with a licensed psychiatrist or should have been prescribed psychotropic medications rather than being placed in an anti-suicide smock and monitored . . . after he inflicted injury upon himself." (Reply Mem. at 1, ECF No. 30.) Allowing such a claim to go forward, they say, "would present a danger for inmates, custody staff, and medical providers alike by potentially spawning copycat behavior within the correctional setting." (Id. at 4.)

Bridges responds that it was Mageary and McDonough who made the call whether he would receive any mental health treatment and that there were two serious incidents of self-harm that should have motivated them to see to it that he received psychiatric care. (Response at 6-7, ECF No. 27.) He contends that allowing an inmate in his condition to simply remain in full restraints for 30 days is a way of ignoring a serious medical need. (Id. at 7.) He emphasizes that unnecessary suffering caused by a denial of care is a form of deliberate indifference and that the facts are capable of supporting an inference of something worse than mere inadvertence or a mere dispute over two reasonable alternative treatment choices. (Id. at 8.)

7

Bridges advances his claims under 42 U.S.C. § 1983, which confers upon every United States citizen a right to redress against any person who, acting under color of state law, causes a deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  Here, there is no dispute that the defendants' treatment of Bridges was carried out under color of state law.  The dispute is whether the claim described a constitutional violation. "As in any action under § 1983, the first step is to identify the exact contours of the underlying right said to have been violated." County of Sacramento v. Lewis, 523 U.S. 833, 842 n.5 (1998). The parties agree that the underlying constitutional right in regard to these defendants concerns the due process right to be protected against "deliberate indifference to serious medical needs." Feeney v. Corr. Med. Servs., 464 F.3d 158, 161 (1st Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 105-106 (1976)).  A state prisoner is protected against such a due process violation by the Fourteenth Amendment.  This standard is not limited to prohibiting torture or "physically barbarous punishments" but is instead measured by "the evolving standards of decency that mark the progress of a maturing society."  Estelle, 429 U.S. at 102.  Deliberate indifference can be shown by "'wanton' decisions to deny or delay care," Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993), such as where the facts show "actual knowledge of impending harm, easily preventable," id.; DeRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991).  The focus of this inquiry "is on what the jailers knew and what they did in response."  Burrell v. Hampshire Cnty., 307 F.3d 1, 8 (1st Cir. 2002).

A trial-worthy claim requires that the plaintiff "satisfy both a subjective and objective inquiry." Leavitt v. Corr. Med. Servs., 645 F.3d 484, 497 (1st Cir. 2011). The subjective inquiry calls for evidence that a defendant possessed a culpable state of mind amounting to "deliberate indifference to an inmate's health or safety."  Farmer v. Brennan, 511 U.S. 825, 834 (1994)

(internal quotation marks omitted). The objective inquiry concerns the harm or need in question, which must involve "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" Id. at 843 (quoting Helling v. McKinney, 509 U.S. 25, 35 (1993)). See also Burrell, 307 F.3d at 8 ("[T]he deprivation alleged must be, objectively, sufficiently serious."). A medical need is "serious" if it has been diagnosed by a physician as needing treatment, or is so obvious that even a lay person would recognize a need for medical intervention. Leavitt, 645 F.3d at 497; Gaudreault v. Mun. of Salem, 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991)). These two inquiries generally overlap and depend on similar evidence. Leavitt, 645 F.3d at 498.

Prisoners have a constitutional right to receive mental health care and treatment. Torraco v. Maloney, 923 F.2d 231, 234-35 (1st Cir. 1991) (addressing an appeal from summary judgment against an eighth amendment claim). "Denial of medical care that results in unnecessary suffering in prison is inconsistent with contemporary standards of decency and gives rise to a cause of action under 42 U.S.C. § 1983." White v. Farrier, 849 F.2d 322, 325 (8th Cir. 1988). Although courts are reluctant "to find deliberate indifference to a serious need 'where the dispute concerns not the absence of help, but the choice of a certain course of treatment,'" Torraco, 923 F.2d at 234 (quoting Sires v. Berman, 834 F.2d 9, 13 (1st Cir. 1987)), claims of deliberate indifference are viable where the evidence is capable of supporting a finding that the medical attention was "so clearly inadequate as to amount to a refusal to provide essential care," id. (quoting Miranda v. Munoz, 770 F.2d 225, 259 (1st Cir. 1985)). Evidence showing at most negligence, or medical malpractice, will not meet the deliberate indifference standard. Id.

Bridges's allegations are sufficient to state a claim. Accepted as true, they indicate both the existence of a sufficiently serious medical need, viewed objectively, and a minimally

9

sufficient basis to infer that the defendants in question were subjectively aware of his need, particularly after the first incident of self-harm.  Additionally, one plausible inference is that the defendants' elected to continue applying full restraints in order to avoid providing essential mental health care.  For purposes of a motion to dismiss, the allegations are minimally sufficient to state a claim for clearly inadequate care amounting to a refusal to provide essential care.

**B.      Lancaster's Motion for Summary Judgment and Bridges's Request for Discovery**

*1.      Standard of review*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in her favor. Hannon v. Beard, 645 F.3d 45, 47-48 (1st Cir. 2011).  If the Court's review of the record reveals evidence sufficient to support a judgment in favor of the non-moving party on one or more of her claims, then there is a trial-worthy controversy and summary judgment must be denied to the extent there are supported claims.  Unsupported claims are properly dismissed.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

Pursuant to Rule 56(d)[2] the court may, among other things, defer consideration of a motion for summary judgment to allow the nonmovant time to take discovery, if the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).  This rule "describes a method of buying time for a party who, when confronted by a summary judgment motion, can demonstrate an authentic need for, and an entitlement to, an additional interval in which to marshal facts essential to mount an

---

[2]      Formerly, Fed. R. Civ. P. 56(f).

opposition." Resolution Trust Corp. v. N. Bridge Assocs., 22 F.3d 1198, 1203 (1st Cir. 1994). "[D]istrict courts should construe motions that invoke the rule generously, holding parties to the rule's spirit rather than its letter." Id. A Rule 56(d) movant must proffer the following: (1) "good cause for the failure to have discovered the facts sooner"; (2) "a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist"; and (3) "how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." Id.; see also Rivera-Torres v. Rey-Hernandez, 502 F.3d 7, 10 (1st Cir. 2007).

   *2.   Discussion*

Lancaster's summary judgment motion is based on the idea that the mere review and denial of a grievance will not support an action under 42 U.S.C. § 1983. (Motion for Summary Judgment at 1, ECF No. 12.) This is true. An after-the-fact assessment of a bygone deprivation, made in the context of reviewing an administrative grievance, does not rise to the level of a constitutional deprivation, because the grievance process is not, in itself, constitutionally mandated, Leavitt v. Allen, No. 94-1641, 1995 U.S. App. LEXIS 2191, at *6, 1995 WL 44530, at *2 (1st Cir. Feb. 3, 1995) (unpublished) (citing Shango v. Jurich, 681 F.2d 1091 (7th Cir. 1982), and Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)), and because the grievance process ordinarily concerns completed acts of alleged misconduct rather than ongoing acts, George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

11

What Bridges says in response is that he would like the opportunity to discover whether Lancaster had the authority and opportunity to do something to assist him. (Combined Affidavit and Memorandum of Law, ECF No. 28-1.) He would like to serve interrogatories, requests for admission, and requests for production of documents (id. ¶ 1) to better understand, among other things, "whether or not defendant Lancaster could have ordered that I be allowed to be treated by a psychiatrist, and could have ordered that I be released from restraints" (Supplemental Affidavit/Memorandum ¶ 4, ECF No. 28-5).

Based on my review, I conclude that Lancaster's summary judgment motion actually fails to demonstrate that there is no genuine dispute as to any material fact. State officials with supervisory oversight can be liable on constitutional claims based on tacit acquiescence and their own deliberate indifference. Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009). Lancaster's affidavit suggests that he had supervisory authority to countermand a prison order involving restraint of Bridges. Bridges, meanwhile, is asserting that Lancaster's review may have taken place while Bridges was still being restrained around the clock rather than medicated. Bridges believes that Lancaster may have had the opportunity to aid him and elected not to do anything. That is one plausible inference that could be drawn and it is an inference that is not dispelled by Lancaster's summary judgment showing.[3] Lancaster's affidavit does not establish that Bridges was removed from full restraints prior to or simultaneous with Lancaster's investigation. Because it is unclear when Lancaster became aware of Bridges's situation, what exactly that situation was at the time, how long that situation persisted during and following Lancaster's investigation, and what authority or opportunity Lancaster had to intervene, it cannot

---

[3] The pleadings suggest that Lancaster's involvement came near the end of the alleged 30-day period of full restraints. It is also possible that Lancaster only received notice after Bridges was released from around-the-clock full restraints. However, one plausible inference is that Lancaster had notice of the circumstances prior to the release of Bridges from full restraints. If so, then it is plausible that a set of facts might be proven that would subject Lancaster to liability.

fairly be said that Lancaster's summary judgment motion shows that there is no genuine issue of material fact. Lancaster's motion for summary judgment needs additional factual development and legal analysis and is insufficient in its present form. I recommend that the Court deny the motion for summary judgment based on its failure to establish the non-existence of a genuine issue, rather than based on Bridges's Rule 56(d) response. Because the motion for summary judgment is inadequate in its current form, I recommend that the court moot, rather than grant, Bridges's motion for Rule 56(d) relief.

## CONCLUSION

For the reasons set forth above, I RECOMMEND that the Court DENY the pending motion to dismiss (ECF No. 23);  DENY the pending motion for summary judgment (ECF No. 12);  and MOOT the pending motion for relief pursuant to Rule 56(d) (ECF No. 28).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

September 19, 2013                    /s/ Margaret J. Kravchuk
                                       U.S. Magistrate Judge